DONALD E. NELSON, APPELLEE, V. LUSTERSTONE SURFACING COMPANY, A NEBRASKA CORPORATION, AND STEPHEN J. MYERS, APPELLANTS.

605 N.W.2d 136

Filed January 28, 2000. No. S-98-576.

S. Caporale for appellants.

Joseph A. Jordano, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Donald E. Nelson, appellee, brought suit against Lusterstone Surfacing Company (Lusterstone) and Stephen J. Myers, appellants, for fraudulent representation, fraudulent concealment, and violation of Nebraska's Consumer Protection Act (CPA). A jury found for appellee on all three theories of recovery and awarded him damages in the amount of $14,000. On appeal, appellants contend that the trial court erred in various respects. The primary issue is whether the CPA applies to transactions that do not affect the public interest. We hold that the CPA does not apply to transactions that do not affect the public interest. However, we affirm the jury verdict because we find no reversible error in submitting the fraudulent misrepresentation and fraudulent concealment theories to the jury.

## FACTS

In March 1995, appellee bought a 1993 Jeep Grand Cherokee from appellant Lusterstone. Appellant Myers, the president and

co-owner of appellant Lusterstone, a Nebraska corporation engaged in the business of resurfacing driveways and patios, negotiated the sale with appellee.

Appellant Myers testified that in December 1994, he bought the Jeep from A.J. Motors in Denison, Iowa. Before appellant Myers purchased the Jeep, he learned that it had been involved in an accident and that the Iowa certificate of title carried a prior salvage designation. Appellant Myers purchased the Jeep for $17,800 and registered it in appellant Lusterstone's name with the Nebraska Department of Motor Vehicles. On the certificate of title that appellant Myers received from the State of Nebraska, the Jeep was erroneously classified as carrying an original title. Therefore, the prior salvage designation was not obvious on the face of the title that appellee subsequently received from the appellants.

Appellant Myers testified that it was his belief that once he received the Nebraska certificate of title, the Jeep no longer carried a prior salvage designation. In order to register the Jeep in Nebraska, he presented the required paperwork to the state and had the Jeep inspected. In return, he received an original Nebraska certificate of title. It was his belief that the prior salvage designation had been expunged once he had gone through the proper channels for registering the Jeep in Nebraska. When appellant Myers sold appellee the Jeep, he did not volunteer the fact that the Jeep had been classified as a prior salvage in Iowa because he did not feel that it was necessary to do so.

Before appellee agreed to purchase the Jeep from appellant Lusterstone, he asked appellant Myers if it had ever been in an accident. Although the evidence is in conflict, appellee testified, and the jury must have believed, that appellant Myers essentially stated that the Jeep had been involved in a "fender-bender." Appellant Meyers did not point out any specific items of damage and did not disclose that it had been titled in Iowa as a prior salvage.

Almost immediately after he purchased the vehicle, appellee noticed problems with its performance. The day after he purchased the Jeep, he called appellant Myers and asked whether there was anything else he should know about the vehicle. Appellant Myers responded in the negative. The Jeep continued

to have problems, and appellee called appellant Myers a second time and asked for his money back. Appellant Myers refused. On the third trip to the automobile repair shop, appellee learned that all warranties on the Jeep, including the manufacturer's warranty, had been released. Upon investigation, he learned that the Jeep's Iowa title carried a prior salvage designation. He then called appellant Myers for the third time and demanded his money back. According to appellee, when asked why he had not disclosed the prior salvage designation, appellant Myers responded, "Well Don [appellee], I got screwed and now you're screwed."

Appellee continued to use the Jeep because he could not sell it with a salvage title without losing money. However, he continued to have problems with it. Eventually, he filed this action against appellants for fraudulent concealment, fraudulent misrepresentation, and violation of the CPA, specifically, Neb. Rev. Stat. § 59-1602 (Reissue 1998).

The jury found for appellee on all three theories of recovery and awarded damages in the amount of $14,000.

### ASSIGNMENTS OF ERROR

Appellants make the following assignments of error, as restated and renumbered by this court. The trial court erred when it (1) applied the CPA to the transaction between appellee and appellants, (2) submitted the CPA claim to the jury for damages, (3) gave certain jury instructions over appellants' objections, (4) refused to give certain jury instructions requested by appellants, and (5) overruled appellants' motion for a directed verdict as to appellant Myers.

### STANDARD OF REVIEW

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Estate of Poach*, 257 Neb. 663, 600 N.W.2d 172 (1999).

■ Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining

party. *Corcoran v. Lovercheck*, 256 Neb. 936, 594 N.W.2d 615 (1999); *Cobb v. Sure Crop Chem. Co.*, 255 Neb. 625, 587 N.W.2d 355 (1998).

■ Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996); *Evergreen Farms v. First Nat. Bank & Trust*, 250 Neb. 860, 553 N.W.2d 728 (1996).

■ In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999).

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

■ A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997).

## CONSUMER PROTECTION ACT

The main issue on appeal is whether the trial court correctly applied the CPA to the private transaction between the parties. Whether a transaction of this type falls within the ambit of the CPA is an issue of first impression. Essentially, appellants argue that because the isolated sale of the Jeep was strictly private and affected no one but the parties, it does not fall within the purview of the CPA. In reply, appellee argues that the CPA is not limited to transactions occurring in business settings, nor is it limited to merchants. Appellee argues that the very absence of such limiting language provides evidence that the Legislature intended the CPA to cover private transactions between individuals.

The CPA is found at Neb. Rev. Stat. § 59-1601 et seq. (Reissue 1998). Under § 59-1602, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce shall be unlawful." The terms "trade" and "commerce" are defined by § 59-1601(2) as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

Section 59-1609 creates a private right of action to persons injured by certain violations of the CPA, including violations of § 59-1602. Any person so injured "may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee." § 59-1609.

We note that several other states have similar consumer protection acts that have been interpreted in various ways. The determination of the issue here, however, depends on how we interpret the language of this state's CPA. When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Estate of Poach*, 257 Neb. 663, 600 N.W.2d 172 (1999).

█ The CPA contains limiting language that cannot be ignored. While it is true that the CPA does not limit its reach to conduct in the course of business, vocation, or occupation, as does the Uniform Deceptive Trade Practices Act found at Neb. Rev. Stat. § 87-301 et seq. (Reissue 1999), see § 87-302(a), the Legislature's intent to limit the application of the CPA is clear. The CPA defines "trade and commerce" as "the sale of assets or services and any commerce *directly or indirectly affecting the people of the State of Nebraska.*" (Emphasis supplied.) § 59-1601(2). We read this definition to limit the disputes that fall within the ambit of § 59-1602 to unfair or deceptive acts or practices that affect the public interest. See, *LaMotte v. The Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E.2d 711 (1988) (public impact requirement recognized by South Carolina Supreme Court); *Noack Enterprises, Inc. v. Country Corner Interiors*, 290 S.C. 475, 477, 351 S.E.2d 347, 348 (S.C. App. 1986) (holding that language " 'directly or indirectly affecting the people of this State' " prevented act's application to unfair or deceptive act or practice that affected only parties to transaction). Compare *Pennington v. Singleton*, 606 S.W.2d 682 (Tex. 1980) (holding that Texas consumer protection statute

applies to strictly private transactions). To be actionable under the CPA, therefore, we conclude that the unfair or deceptive act or practice must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected. See *Noack Enterprises, Inc. v. Country Corner Interiors, supra.*

Furthermore, if the Legislature had intended the CPA to cover all private causes of action, then the limiting language found in § 59-1601(2) would not have been included. In construing a statute, effect must be given, if possible, to all of its several parts; no word, clause, or sentence should be rejected as meaningless or superfluous if it can be avoided. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995). The Legislature could have defined "trade and commerce" as "the sale of assets or services and any commerce." The Legislature chose, however, to add the limiting language "directly or indirectly affecting the people of the State of Nebraska." See § 59-1601(2). We cannot ignore this language and apply the CPA to isolated transactions between individuals that do not have an impact on consumers at large. To do so would be a misconstruction of the statute.

Were we to hold otherwise, where would the line be drawn? Theoretically, the CPA would apply to every single transaction in which there was an alleged unfair or deceptive act or practice. It would even apply to transactions in the context of flea markets or garage sales. We conclude that the Legislature did not intend such a result when it adopted 1974 Neb. Laws, L.B. 1028, as an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies.

Under the facts of this case, the transfer of the Jeep from appellants to appellee affected no one other than the parties to the transaction, and appellee has not shown a sufficient impact indirectly or directly on the public to qualify the transaction as an act or practice which is prohibited under § 59-1602. We therefore conclude that the trial court erred when it found that the CPA applied to appellants' fraudulent acts.

Having determined that the CPA should not have been applied in this case, we must now determine whether its erroneous application requires reversal. This case was submitted to

the jury on three separate theories of recovery: (1) fraudulent misrepresentation, (2) fraudulent concealment, and (3) violation of the CPA. The jury found in appellee's favor, and against appellants, on all three theories. As a result of their findings, the jury awarded appellee $14,000 in damages. The trial court instructed the jury in instruction No. 27 that "[a]lthough the Plaintiff seeks recovery of damages on three theories, you may assess only one recovery. If you find for the Plaintiff on one or more of the theories, any verdict for the Plaintiff must be in a single amount and there can be no duplication of damages therein." This instruction makes clear that the jury was to award appellee damages based on the fraudulent misrepresentation theory, the fraudulent concealment theory, or violation of the CPA theory. It is clear from the instruction that the jury was not to duplicate damages if it found for the appellee on more than one of the proffered theories. Thus, if the instructions on damages were such that the jury would have arrived at the same award regardless of the theory on which it chose to assign damages, then the erroneous application of the CPA does not require reversal. In other words, if any one of the three theories of recovery is valid, and the assigned damages would be the same on each of them, then the verdict as to appellee's single cause of action stands.

The law is well established that on appellate review, jury instructions must be read together; they must be read conjunctively, rather than separately in isolation. See *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). In this case, the jury was given two instructions on how to award damages if it found in favor of appellee. The first of these two, instruction No. 22, instructed the jury on the measure of damages if it found in favor of appellee on the CPA theory. The instruction states, "If you find in favor of Plaintiff on his claim that one or both of Defendants violated the Nebraska Consumer Protection Act, you may award Plaintiff damages in the amount of the Plaintiff's actual damages." The jury was not given any specific definition of "actual damages." Instruction No. 23, the second of the two instructions on damages, however, provided the following:

> If you find in favor of the Plaintiff on his claim for misrepresentation or fraudulent concealment, or violation of

the Nebraska Consumer Protection Act, then you must determine the amount of Plaintiff's damages.

In an action for fraud, a party may recover such damages as will compensate him for the loss actually caused by the fraud and place the party in the same position as he would have been in had the fraud not occurred.

In arriving at such damages, you may consider:

1. Whether the Plaintiff would have purchased the vehicle if he knew it was prior salvage;

2. The amount the Plaintiff paid for the vehicle and the fair market value of the vehicle (as a prior salvage vehicle) as of March 13, 1995;

3. The fair and reasonable expenses incurred by the Plaintiff while the vehicle was in Plaintiff's possession; and

4. The fair and reasonable value of the use of the vehicle while it was in Plaintiff's possession.

Whether any of the above elements of damage have been proved by a greater weight of the evidence is for you to determine. You are not permitted to allow any damages by way of punishment or through sympathy. Your verdict must be based upon evidence and not upon speculation or conjecture.

Reading these instructions together, it is reasonably clear that the "actual damages" referred to in instruction No. 22 are the same as "the loss actually caused" referred to in instruction No. 23. It is an instruction's meaning, not its phraseology, that is the crucial consideration, and a claim of prejudice will not lie when the instruction's meaning is reasonably clear. *Scharmann v. Dayton Hudson Corp.*, 247 Neb. 304, 526 N.W.2d 436 (1995). As such, the jury instructions on damages were the same for each of the three theories of recovery. Whether the jury assigned damages based on fraudulent misrepresentation, fraudulent concealment, or violation of the CPA, the measure of damages would be determined according to instruction No. 23. Therefore, in terms of appellee's recovery, it makes no difference whether the CPA was erroneously applied. Even without the CPA, the same result would have been reached on the fraudulent misrepresentation or the fraudulent concealment claim. Thus, we find that the erroneous application of the CPA to appellee's case was harmless error by the trial court.

Next, appellants argue that the district court erred when it submitted the CPA theory to the jury for damages. Appellants' argument on this particular assignment, however, consists of one sentence. Appellants argue that under *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986), the CPA is equitable in nature and that therefore, trial is to the court, not to the jury. Since we have already decided that the erroneous application of the CPA was harmless, it makes no difference whether the theory was submitted to the jury.

### JURY INSTRUCTIONS GIVEN AT TRIAL

██ Under the third assignment of error, appellants argue that the trial court erred when it gave certain jury instructions over their objections. Specifically, they assign as error the giving of the following jury instructions: Nos. 2C, 2D, 2F, 2G, 6, 11, 12, 13, 21, and 22. In order to appeal a jury instruction, an objection to the proposed instruction must be made at the trial level. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996). Furthermore, in order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999).

Of the 10 instructions that appellants assign as error, only 2 of them have been properly objected, assigned, and argued. We will therefore not consider the other eight instructions assigned as error. The two instructions properly before the court, Nos. 21 and 22, both deal with the CPA. Since we have already determined that application of the CPA in this case was error, albeit harmless error, we need not determine whether these two instructions resulted in prejudicial error. Obviously, the instructions should not have been given because the CPA did not apply to the transaction between the parties. The point is moot, however, in light of our finding that it was harmless error for the trial court to apply the CPA in this case.

Under the fourth assignment of error, appellants contend that the trial court erred when it refused to give proposed jury

instructions Nos. 4, 7, 8, and 13. We decline to address this contention, however, because appellants have failed to provide any meaningful argument on the fourth assignment of error. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999).

Appellants' "argument" on the fourth assignment of error consists of the unsupported statement that the proffered instructions were promulgated by the Supreme Court and should have been followed by the trial court. Appellants do not attempt to explain, however, why they should have been followed. Appellants assert that the instructions were clear and concise and not suggestive to the jury. We cannot discern from this argument why the proposed instructions should have been given. Appellants have essentially failed to make any of the showings that are required to establish reversible error from a court's refusal to give a requested instruction. We find that appellants have failed to meet their burden of proof. Therefore, we cannot say that the trial court erred in its refusal to give the proposed instructions.

Finally, we reach the fifth assignment of error, in which appellants argue that the trial court erred by overruling their motion for a directed verdict. A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Alexander v. Warehouse*, 253 Neb. 153, 568 N.W.2d 892 (1997).

At the close of appellee's case and again at the close of all the evidence, appellants moved for a directed verdict as to appellant Myers. Appellants' motion was based on their contention that appellant Lusterstone, as owner of the Jeep, was the only proper defendant. Appellants argued that appellee had not produced sufficient evidence to pierce appellant Lusterstone's corporate veil or to treat appellant Myers as an alter ego of the corporation. In other words, appellants argued that appellant Myers

could not be held personally liable for his actions on behalf of the corporation. On appeal, appellants argue that to hold appellant Myers liable, the corporate veil must be pierced. We find appellants' argument to be without merit.

 Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation. *Huffman v. Poore*, 6 Neb. App. 43, 569 N.W.2d 549 (1997). However, it has long been held in Nebraska that where fraud is committed by a corporation, it is time to disregard the corporate fiction and hold the persons responsible for the fraud liable in their individual capacities. *Id.* See, also, *ServiceMaster Indus. v. J.R.L. Enterprises*, 223 Neb. 39, 388 N.W.2d 83 (1986). What constitutes fraud is a question of fact in each case. *ServiceMaster Indus. v. J.R.L. Enterprises, supra.*

At the close of appellee's case, there was ample evidence to support a finding that appellant Lusterstone committed fraud through the actions of its president, appellant Myers. Therefore, this was an appropriate case in which to disregard the corporate fiction and hold appellant Myers responsible in his individual capacity. We therefore find that the trial court did not err by overruling appellants' motion for a directed verdict.

## CONCLUSION

The trial court erred in applying § 59-1602 of the CPA to appellee's case. The error was harmless, however, because the jury instructions on damages were the same for all three theories of recovery. Having found no reversible error, we affirm the judgment entered by the trial court.

AFFIRMED.