JILL A. ARTHUR AND NANCY WATERS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, APPELLANTS, V. MICROSOFT CORPORATION, A WASHINGTON CORPORATION, APPELLEE.

676 N.W.2d 29

Filed March 19, 2004.   No. S-01-1325.

Robert M. Hillis, Nicholas J. Lamme, and Timothy M. Schulz, of Yost, Schafersman, Lamme, Hillis, Mitchell & Schulz, P.C., L.L.O., for appellants.

Norman M. Krivosha, Robert M. Slovek, and Todd C. Kinney, of Kutak Rock, L.L.P., and David B. Tulchin, Joseph E. Neuhaus, Anastasia A. Angelova, and Richard C. Pepperman II, of Sullivan & Cromwell, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ., and CARLSON, Judge.

WRIGHT, J.

## NATURE OF CASE

Jill A. Arthur and Nancy Waters, the plaintiffs, filed a class action against Microsoft Corporation in the district court for Dodge County. The plaintiffs brought the action on behalf of themselves and others similarly situated, alleging a violation of Nebraska's Consumer Protection Act (Act), Neb. Rev. Stat. § 59-1601 et seq. (Reissue 1998 & Cum. Supp. 2000), and Neb.

U.C.C. § 2-302 (Reissue 2001). The district court sustained Microsoft's demurrer and dismissed the action without leave to amend, finding that the plaintiffs failed to state a cause of action. On appeal, we affirmed by an equally divided court. Subsequently, we granted the plaintiffs' motion for rehearing. Today, we affirm in part, and in part reverse the judgment of the district court and remand the cause for further proceedings. The memorandum opinion filed June 25, 2003, is withdrawn.

## SCOPE OF REVIEW

■ When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Jacobson v. Solid Waste Agency of Northwest Neb.*, 264 Neb. 961, 653 N.W.2d 482 (2002).

■ In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Cole v. Isherwood*, 264 Neb. 985, 653 N.W.2d 821 (2002).

## FACTS

In their amended petition, the plaintiffs alleged that Microsoft is a for-profit corporation organized and existing under the laws of the State of Washington. It is the leading supplier of operating systems for personal computers, and it markets and licenses its Windows 98 operating system throughout the United States, including Nebraska.

For purposes of this action, a personal computer is a digital information-processing device for use by one person and includes desktop and laptop models. "Intel-based" personal computers, or computers designed for compatibility with Intel Corporation's "Pentium" family of microprocessors, are the dominant type of personal computers sold and used in the United States. Microsoft has licensed its Windows 98 operating system for Intel-based personal computers.

The plaintiffs' class is defined as all end-user licensees of Windows 98 residing in Nebraska for whom Microsoft has an electronic mail or surface address that is accessible by Microsoft.

The plaintiffs are informed and believe that the membership of the class is well in excess of 4,000, the exact number being known to Microsoft.

As of June 1998, more than 90 percent of new Intel-based personal computers had been shipped with a version of Windows preinstalled in the computer. The plaintiffs further alleged that Microsoft possesses a dominant and increasing share of the market for operating systems, which share over the decade leading up to the filing of the plaintiffs' petition exceeded 90 percent. During the 2 years leading up to the filing of the plaintiffs' petition, Microsoft's share was at least 95 percent, and it was projected that Microsoft's share would increase in the years immediately following the filing of the petition.

On June 7, 1999, Waters purchased a personal computer from Gateway Direct Computer Sales, a computer distributor. In addition to the computer hardware purchased from Gateway Direct Computer Sales, Waters acquired a license to use the Windows 98 operating system which had been placed on CD-ROM by Microsoft and copied to the hard drive of the computer. On June 4, 2000, Arthur acquired a Windows 98 operating system CD-ROM from CompUSA, a computer distributor, and installed it on her computer. As a precondition to loading and using the Windows 98 operating system, both Waters and Arthur were required to accept an end-user license agreement. The plaintiffs alleged that upon accepting the agreement, both Waters and Arthur became end-user licensees of Microsoft as to Windows 98.

The plaintiffs further alleged that Microsoft's pricing behavior demonstrated that it possessed monopoly power in the market for operating systems for Intel-based personal computers and that Microsoft unlawfully and willfully maintained its monopoly power by anticompetitive and unreasonably exclusionary conduct. They claimed that as a consequence of Microsoft's monopoly, it was able to exercise unfettered discretion in setting the price for a Windows 98 license. The plaintiffs contended that Microsoft licensed Windows 98 at a monopoly price in excess of the amount it would have been able to charge in a competitive market.

The plaintiffs brought their claim pursuant to the Act and § 2-302. The plaintiffs alleged that they and all others similarly situated incurred a monopoly price charged by Microsoft for the

use of Windows 98. The plaintiffs alleged that they were entitled to damages according to proof as to the difference between a competitive price and the monopoly price that they incurred as end-user licensees for their use of Windows 98.

Microsoft's demurrer to the plaintiffs' amended petition was sustained as to the antitrust claim. Relying upon *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), the district court held that the plaintiffs, as indirect purchasers, could not bring suit under the Act. The court then dismissed the plaintiffs' amended petition without leave to further amend, finding that the plaintiffs failed to state a cause of action for both the antitrust claim and the claim alleging an unconscionable contract. The plaintiffs timely appealed, and we affirmed, by an equally divided court, the judgment of the district court via a memorandum opinion filed June 25, 2003. We subsequently granted the plaintiffs' motion for rehearing.

## ASSIGNMENTS OF ERROR

The plaintiffs assign that the district court erred (1) in holding that this case is controlled by *Illinois Brick Co.* and that the plaintiffs failed to state a cause of action, (2) in holding that the plaintiffs are indirect purchasers and thus failed to state a cause of action, and (3) in holding that the plaintiffs' claim based upon unconscionable contract terms and § 2-302 failed to state a cause of action.

## ANALYSIS

### STANDING

We first consider whether the plaintiffs have standing to bring a cause of action under the Act. The Act provides: "It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." § 59-1604. "Any person who is injured in his business or property by a violation of sections 59-1602 to 59-1606 . . . may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit . . . ." § 59-1609.

Federal antitrust law contains provisions corresponding to §§ 59-1604 and 59-1609: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2 (2000). Pursuant to 15 U.S.C. § 15(a) (2000), any person who shall be injured in his business or property because of a violation of the antitrust laws may bring a civil action for treble damages.

Neb. Rev. Stat. § 59-829 (Reissue 1998) provides: "When . . . any provision of Chapter 59 is the same as or similar to the language of a federal antitrust law, the courts of this state in construing . . . any provision of Chapter 59 shall follow the construction given to the federal law by the federal courts." In dismissing the plaintiffs' antitrust claim, the district court determined that § 59-829 required it to accept the construction of the federal courts in federal antitrust actions in determining who has standing to bring an action under the Act. The district court concluded that the issue of standing was controlled by *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), which held that under federal law, indirect purchasers are not entitled to sue for damages for a violation of the Sherman Act, 15 U.S.C. § 1 et seq. (2000).

In *Illinois Brick Co.*, the State of Illinois brought suit against concrete block manufacturers, alleging a violation of the Clayton Act. Pursuant to § 4 of the Clayton Act, codified at 15 U.S.C. § 12 et seq. (2000), any person injured by reason of anything forbidden in the antitrust laws may bring suit to recover damages sustained by him. The U.S. Supreme Court held that the state was an indirect purchaser because it did not buy concrete blocks directly from the manufacturers. The Court explained that the "direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property'" within the meaning of § 4 of the Clayton Act. See *Illinois Brick Co.*, 431 U.S. at 729. Therefore, the Court concluded that federal antitrust law barred claims by indirect purchasers.

In *Kansas v. Utilicorp United Inc.*, 497 U.S. 199, 110 S. Ct. 2807, 111 L. Ed. 2d 169 (1990), the Court reaffirmed *Illinois Brick Co.* by holding that indirect purchasers were barred from

bringing suit even though the direct purchasers (natural gas utilities) were required by law to pass on the entire amount of an overcharge to the consumers.

In the case at bar, the plaintiffs claim that indirect purchasers have standing to sue under the Act because its language is different from federal law. They argue that when considering the Act in its entirety, certain sections have no counterpart in federal law and that, therefore, this court is not required to follow the construction given to the Sherman Act by the federal courts in deciding whether to permit recovery by indirect purchasers.

The plaintiffs point out that § 59-1601(2) has no counterpart in federal antitrust law. Section 59-1601(2) defines trade and commerce as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." Commerce is defined by federal law as "trade or commerce among the several States and with foreign nations." See 15 U.S.C. § 12. The plaintiffs claim that § 59-1601(2) differentiates the Act from federal antitrust law, and they contend that the plain language of the Act provides a cause of action for the benefit of any person who is damaged as a result of prohibited activity under the Act. They assert that they were damaged as a result of Microsoft's activity and therefore have standing to bring suit under the Act.

Microsoft argues that in construing the Act, the courts of Nebraska are required to follow federal court interpretations of similar provisions of federal antitrust law. It claims that § 59-1604, which is relied upon by the plaintiffs, is based upon § 2 of the Sherman Act, 15 U.S.C. § 2. Microsoft asserts that because the Act mirrors federal law and is the state version of the Sherman Act, see *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003 (D. Neb. 1998), and *State ex rel. Douglas v. Associated Grocers*, 214 Neb. 79, 332 N.W.2d 690 (1983), § 59-829 requires that the construction given to federal law by federal courts be applied to the Act. Microsoft also claims that § 59-1609 is similar to 15 U.S.C. § 15.

Microsoft argues that the phrase "[t]rade and commerce," as it is defined in § 59-1601(2), does not provide standing to indirect purchasers because the terms "trade" and "commerce" do not appear in § 59-1609, which regulates who is injured and who may sue under the Act. Microsoft asserts that the terms

"trade" and "commerce" appear in the sections that address the substantive conduct governed by the Act, i.e., monopolization, and that, therefore, the terms define business conduct that is regulated but do not define who can sue. Microsoft claims that § 59-1601(2) uses the phrase "directly or indirectly" to define the scope of the Act's jurisdiction but does not define the class of persons entitled to bring an action under the Act. See, *Arnold v. Microsoft Corp.*, No. 2000-CA-002144-MR, 2001 WL 1835377 (Ky. App. Nov. 21, 2001); *Blewett v. Abbott Lab.*, 86 Wash. App. 782, 938 P.2d 842 (1997). Microsoft points out that courts in Washington and Kentucky have rejected plaintiffs' arguments regarding antitrust statutes which contain identical language defining the terms " 'trade' " and " 'commerce.' " See *Arnold*, 2001 WL 1835377 at *4.

The issue presented is whether an indirect purchaser may bring a civil action under the Act. In our examination of this question, we are guided by several legal principles. When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Jacobson v. Solid Waste Agency of Northwest Neb.*, 264 Neb. 961, 653 N.W.2d 482 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002).

In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002). The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed in pari materia to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Id.* It is a canon of statutory construction that " 'the primary source of insight into the intent of

the Legislature is the language of the statute.'" See *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 60, 762 N.E.2d 303, 310 (2002), quoting *International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 443 N.E.2d 1308 (1983).

We believe that if this court were to construe the provisions of the Act such that only direct purchasers are injured parties, then the purpose of the Act would be defeated. Section 59-829 does not require us to hold that indirect purchasers have no standing under the Act if to do so would not support the Act's purpose. In construing the Act, we must look to the objective to be accomplished, the problem to be remedied, or the purpose to be served, and then give the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

Section 59-1609 provides that any person injured by a violation may sue for damages. The clear purpose of the Act is to provide consumer protection against the monopolization of trade or commerce. In this action, it is alleged that over 4,000 consumers have been injured. The Act describes a very broad category of persons who are permitted to maintain an action for damages resulting from monopolistic conduct in trade or commerce. Therefore, we conclude that § 59-1609, as it relates to a cause of action for any person injured in violation of § 59-1604, contemplates an action by indirect purchasers.

In *California v. ARC America Corp.*, 490 U.S. 93, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989), the Court held that state indirect purchaser laws were not preempted by federal law, notwithstanding the federal rule limiting federal antitrust recoveries to direct purchasers. The Court noted that *Hanover Shoe v. United Shoe Mach.*, 392 U.S. 481, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), had construed federal antitrust law but did not hold that state law was preempted by federal antitrust law. The Court found no language in *Illinois Brick Co.* to suggest that it would be contrary to Congressional purpose for states to allow indirect purchasers to recover under their own state antitrust laws. State indirect purchaser laws did not interfere with accomplishing the federal law purposes identified in *Illinois Brick Co.*

We first considered the scope of the Act in *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000), in which an automobile buyer brought an action against a private seller, a corporation, and the corporation's president for fraudulent representation, fraudulent concealment, and violation of the Act. We addressed the standing of a private person to bring an action and whether the trial court correctly applied the Act to a private transaction between the parties.

In construing the Act, we recognized that § 59-1609 created a private right of action to persons injured by certain provisions of the Act, including violations of § 59-1602. We read the definition of the phrase "[t]rade and commerce" in § 59-1601(2) as limiting the disputes that fall within the ambit of § 59-1602 to unfair or deceptive acts or practices that affect the public interest.

We held that to be actionable under the Act, the unfair or deceptive act or practice must have an impact upon the public interest and that the Act is not available to redress a private wrong where the public interest is unaffected. We refused to apply the Act to isolated transactions between individuals that did not have an impact on consumers at large. In *Nelson*, the transfer of the automobile affected no one other than the parties to the transaction, and therefore, it had not been shown that there was a sufficient impact directly or indirectly on the public to qualify the transaction as an act or practice which was prohibited under § 59-1602.

The Supreme Court of Iowa addressed similar issues in *Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002). In *Comes*, a group of computer consumers brought a class action against Microsoft, alleging a violation of the Iowa Competition Law. The trial court, relying on *Illinois Brick Co., supra*, granted Microsoft's motion to dismiss. It concluded that the indirect purchaser rule set forth in *Illinois Brick Co.* applied to the Iowa Competition Law. The trial court noted a similarity between the federal and state statutes and the statutory directive to harmonize state and federal laws. It concluded that the indirect purchasers had no standing to bring the action.

On appeal, the only issue was whether *Illinois Brick Co.* should be followed in interpreting the Iowa Competition Law. The plaintiffs argued that *Illinois Brick Co.* should not be applied

because Iowa law did not limit the class of plaintiffs who could bring a state antitrust suit. Microsoft argued that harmonization with federal law was required and that, therefore, only direct purchasers could recover damages for antitrust violations.

The court held that the Iowa Competition Law authorized a broad category of persons who could maintain a suit in state court for damages due to anticompetitive conduct. "[A] person who is injured . . . by conduct prohibited [by the Iowa Competition Law] may bring suit." Iowa Code Ann. § 553.12 (West 1997). Relying upon *California v. ARC America Corp.*, 490 U.S. 93, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989), the Iowa court stated that neither the Sherman Act nor *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), prevented states from allowing indirect purchasers to bring antitrust actions even if this resulted in multiple recoveries. Therefore, the court found that states were authorized to provide a cause of action for indirect purchasers based on state antitrust laws.

The Iowa Supreme Court stated that the legislature did not specifically limit standing to direct purchasers, but, instead, authorized " '[a] person who is injured' to sue." *Comes*, 646 N.W.2d at 445. The court did not consider the legislative failure to explicitly authorize an indirect purchaser to maintain a suit for antitrust violations as an expression of its agreement with *Illinois Brick Co.* The court concluded that the Iowa Competition Law created a cause of action for all consumers regardless of their status as a direct or indirect purchaser.

Having so concluded, the court proceeded to address Microsoft's argument that indirect purchasers did not have standing as a result of the harmonization statute, which provided:

"This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter. This construction shall not be made in such a way as to constitute a delegation of state authority to the federal government, but shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices."

(Emphasis omitted.) *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 446 (Iowa 2002). The court concluded that the harmonization

statute did not require Iowa courts to interpret the Iowa Competition Law in the same manner that federal courts have interpreted federal law.

The Iowa Supreme Court stated that given there was no federal preemption on this issue, it was required to construe the Iowa Competition Law in a manner to encourage the primary goal of the antitrust law, citing *Neyens v. Roth*, 326 N.W.2d 294 (Iowa 1982) (antitrust laws are remedial and should be broadly construed to effect their purposes). The court explained:

> The purpose behind both state and federal antitrust law is to apply a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct. To achieve this uniformity or predictability, we are not required to define who may sue in our state courts in the same way federal courts have defined who may maintain an action in federal court. Rather, our guiding principle in interpreting the Iowa Competition Law is to do so in such way as to prohibit "restraints of economic activity and monopolistic conduct." Harmonizing our construction and interpretation of state law as to what conduct is governed by the law satisfies the harmonization provision.

*Comes*, 646 N.W.2d at 446. The court concluded that contrary to Microsoft's assertion, the harmonization provision of Iowa law was not aimed at defining who can sue under state antitrust law, but was designed to achieve uniform application of the state and federal laws prohibiting monopolistic practices.

We find the Iowa court's reasoning instructive, and we adopt its rationale. In attempting to facilitate the consistent application of antitrust laws in state and federal courts, the Legislature has required state courts to harmonize their interpretation of state law with the interpretation of similar federal law by federal courts. The purpose of the Act is to provide consumers with protection against unlawful practices in the conduct of any trade or commerce which directly or indirectly affects the people of Nebraska. See *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000).

The Act was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies. *Id.* The limitation that the Legislature placed on the Act

was that it could not be used to address a private wrong where the public interest was unaffected. See *id.*

Giving the language of the Act its plain and ordinary meaning while construing its provisions in pari materia to determine the intent of the Legislature, we conclude that the Act allows any person who is injured by a violation of §§ 59-1602 to 59-1606 which directly or indirectly affects the people of Nebraska to bring a civil action to recover damages.

We interpret the provisions of § 59-829 in a manner similar to the reasoning of the court in *Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002). We do not interpret § 59-829 as a delegation of state authority to the federal government, but, rather, as having the purpose to achieve uniform application of the state and federal laws regarding monopolistic practices. The goal is to establish a uniform standard of conduct so that businesses will know what conduct is permitted and to protect the consumer from illegal conduct.

The plaintiffs alleged that Microsoft had at least 95 percent of the market share for operating systems for Intel-based personal computers. Direct purchasers that pass on overcharges may not need or seek the protection of the Act. Direct purchasers may not be inclined to jeopardize their major source of supply of the operating systems contained within the personal computers they manufacture and distribute. To deny the indirect purchaser, who in this case is the ultimate purchaser, the right to seek relief from unlawful conduct would essentially remove the word "consumer" from the Consumer Protection Act.

It is important to achieve and maintain a consistency in defining the types of business activity that are to be prohibited as unlawful. Harmonizing state law with federal law and its interpretation by federal courts will achieve uniformity and predictability as to the practices that are prohibited. As the Iowa Supreme Court succinctly stated: "Harmonizing our construction and interpretation of state law as to what conduct is governed by the law satisfies the harmonization provision." *Comes*, 646 N.W.2d at 446.

Section 59-1609 provides both a private right of action and a public right. We find no limitation on who may sue for violations of §§ 59-1602 to 59-1606 except that such violations must

directly or indirectly affect the people of Nebraska. *Nelson, supra,* requires us to determine whether the alleged unfair activities of Microsoft affect the people of Nebraska.

The plaintiffs alleged that membership of the class affected by Microsoft's activities is in excess of 4,000, the exact number being known to Microsoft. In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Cole v. Isherwood,* 264 Neb. 985, 653 N.W.2d 821 (2002). We conclude that the plaintiffs have set forth sufficient facts in their amended petition to show that the public interest is affected. Under the facts alleged, the practices of Microsoft affect the people of the State of Nebraska. Thus, the district court erred in sustaining Microsoft's demurrer as to the plaintiffs' antitrust claim under the Act.

## NEB. U.C.C. § 2-302

We next address the plaintiffs' claim pursuant to § 2-302. The plaintiffs alleged that as end-user licensees of Microsoft and its Windows 98 operating system, they incurred a monopoly price charged by Microsoft. They claimed that the price versus cost disparity associated with their purchase and use of Windows 98 renders the contract between Microsoft and the plaintiffs unconscionable under § 2-302. The plaintiffs sought damages in the amount of the difference between a competitive price and the monopoly price that they incurred as end-user licensees/purchasers of Windows 98, as well as costs, attorney fees, and other relief.

The operative portion of § 2-302 provides:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Microsoft correctly points out that § 2-302 does not provide for money damages. The doctrine of unconscionability set forth in

§ 2-302 is not a basis for the award of money damages. As certain courts have noted, this provision of the Uniform Commercial Code was not intended to create a cause of action and cannot be used as a basis for damages. See, *Cowin Equipment Co., Inc. v. General Motors Corp.*, 734 F.2d 1581 (11th Cir. 1984); *Dean Witter Reynolds v. Superior Court*, 211 Cal. App. 3d 758, 259 Cal. Rptr. 789 (1989) (unconscionability provision does not create affirmative cause of action, but only defense); *Best v. U.S. National Bank*, 78 Or. App. 1, 714 P.2d 1049 (1986) (no authority that doctrine of unconscionability is basis for restitutionary relief).

The plaintiffs' claim for damages under § 2-302 is without merit. Thus, the district court properly dismissed their cause of action with regard to a claim pursuant to § 2-302.

## CONCLUSION

The district court erred in its interpretation of the Act. Section 59-1609 permits indirect purchasers to bring a civil action under the terms of the Act. For the reasons set forth in this opinion on rehearing, the judgment of the district court is affirmed in part and in part reversed, and the cause is remanded for further proceedings. The memorandum opinion filed June 25, 2003, is withdrawn.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

MILLER-LERMAN, J., not participating.

STEPHAN, J., dissenting in part.

While I agree with the majority that the appellants' claim under Neb. U.C.C. § 2-302 (Reissue 2001) is without merit, I respectfully dissent with respect to its conclusion that the district court erred in dismissing the appellants' claim under Nebraska's Consumer Protection Act (Act), Neb. Rev. Stat. § 59-1601 et seq. (Reissue 1998 & Cum. Supp. 2000). In my view, the provisions of the Act which define who may bring a private civil action for damages were, at all relevant times, substantially similar to corresponding language in § 4 of the Clayton Act, see 15 U.S.C. § 15(a) (2000), and the district court was therefore correct in concluding that it was obligated under Neb. Rev. Stat. § 59-829 (Reissue 1998) to follow *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), in construing the Nebraska statute.

Section 59-829 requires that when any language in the Act is "the same as or similar to the language of a federal antitrust law," Nebraska courts in construing the Act "shall follow the construction given to the federal law by the federal courts." It is difficult to imagine how the Legislature could have been more clear in articulating its intent that provisions of the Act which were modeled after federal antitrust law must be construed in the same manner that the U.S. Supreme Court construes the corresponding federal statutes. In carrying out this directive, it is imperative that we clearly identify the state and federal statutes which are counterparts of each other so that we do not commit the error of comparing state apples to federal oranges.

The appellants' claim is based upon an alleged violation of the substantive provision of § 59-1604, which states: "It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." The corresponding substantive provision of federal antitrust law is § 2 of the Sherman Act, which provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2 (2000). While the federal statute applies to monopolization of "trade or commerce among the several States," i.e., interstate commerce, the corresponding Nebraska statute uses only the phrase "[t]rade and commerce," which is defined elsewhere in the Act as "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska." § 59-1601(2). In *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 684, 605 N.W.2d 136, 142 (2000), we held that this definitional language limited the scope of the Act to acts or practices which have "an impact upon the public interest," and concluded that the Act is not available "to redress a private wrong where the public interest is unaffected."

Thus, while it must be shown that challenged conduct affects interstate commerce in order to be actionable under the federal antitrust laws, it is only necessary to show that such conduct affects the public interest in order to fall within the scope of the Act. But that is not the issue before us. Assuming arguendo that

the conduct at issue in this case is proscribed by the Act, the question presented here is whether the appellants, as indirect purchasers, are authorized by law to bring a civil action for damages resulting from such conduct. The Act, as it was written when this suit was commenced, authorized "[a]ny person who is injured in his business or property" by a violation of the substantive provisions of the Act to bring an action for injunctive relief and damages. § 59-1609. The corresponding provision of federal antitrust law is § 4 of the Clayton Act, which permits "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to bring a civil action for treble damages. 15 U.S.C. § 15(a). The U.S. Supreme Court construed this federal statutory provision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977). In that case, the Court reaffirmed its holding in *Hanover Shoe v. United Shoe Mach.*, 392 U.S. 481, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968), that a defendant in an antitrust suit could not assert as a defense that the plaintiff suffered no injury in its business as required by § 4 of the Clayton Act because it had passed on the claimed illegal overcharge to its customers. Specifically, the Court in *Illinois Brick Co.* declined "to construe § 4 [of the Clayton Act] to permit offensive use of a pass-on theory against an alleged violator that could not use the same theory as a defense in an action by direct purchasers." *Illinois Brick Co.*, 431 U.S. at 735.

Under both § 4 of the Clayton Act and § 59-1609 as it was written when this action was commenced, a private civil action may be maintained by one whose "business or property" is injured by the claimed substantive law violation. Because of the similar language employed by each statute in defining who may be a plaintiff, it is my view that § 59-829 requires this court to construe § 59-1609 in the same manner that the U.S. Supreme Court construed § 4 of the Clayton Act in *Illinois Brick Co.* to exclude indirect purchasers from the class of potential plaintiffs. This is purely a matter of statutory construction.

As the majority notes, the U.S. Supreme Court has specifically held that states are free to enact legislation permitting indirect purchasers to bring civil antitrust actions under state law. *California v. ARC America Corp.*, 490 U.S. 93, 109 S. Ct. 1661,

104 L. Ed. 2d 86 (1989). Indeed, the Nebraska Legislature did precisely that in 2002 when it amended § 59-1609 to permit a person injured in his or her business or property to sue "whether such injured person dealt directly or indirectly with the defendant." 2002 Neb. Laws, L.B. 1278 (effective July 20, 2002). While that is the law in Nebraska now, it was not the law when this action was commenced on February 28, 2001, or when the district court dismissed the action in November 2001. If, in a subsequent amendment on the same or similar subject, the Legislature uses different terms in the same connection, a court interpreting the subsequent enactment must presume that the Legislature intended a change in the law. *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003); *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002). In my view, the majority ignores both this principle and the harmonization provision of § 59-829 by concluding that § 59-1609 authorized suit by an indirect purchaser before the Legislature amended the statute to specifically create that right.

Nor am I persuaded that the decision of the Iowa Supreme Court in *Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002), relieves this court of its responsibility to interpret the Act in accordance with the specific rule of construction prescribed by our Legislature in § 59-829. The Iowa case is distinguishable on at least two grounds. First, it interpreted language in the Iowa Competition Law authorizing a private civil action by a " 'person who is injured . . . by conduct prohibited under this chapter.' " *Comes*, 646 N.W.2d at 443. This language is different from the language of § 59-1604 and § 4 of the Clayton Act as construed in *Illinois Brick Co.*, which authorizes a civil suit by a "person injured in his business or property" as a result of claimed unlawful conduct. Second, the harmonization provision in the Iowa Competition Law differs from § 59-829 in that it directs Iowa courts to construe its statute " 'to complement and be harmonized with the applied laws of the United States' " having a similar purpose in order to achieve " 'uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices.' " (Emphasis omitted.) *Comes*, 646 N.W.2d at 446, citing and quoting Iowa Code Ann. § 553.2 (West 1997). Against this statutory background, the Iowa Supreme

Court defined the issue as whether it "should interpret Iowa antitrust law in the same way the United States Supreme Court has interpreted federal antitrust law" and resolved the issue by concluding that Iowa courts were not required "to interpret the Iowa Competition Law the same way federal courts have interpreted federal law." *Comes*, 646 N.W.2d at 445-46. I conclude that the opposite result is compelled by the language of § 59-829 requiring that Nebraska courts, in construing provisions of our Act using language similar to that of the federal antitrust laws, "shall follow the construction given to the federal law by the federal courts."

For these reasons, on rehearing, I would affirm the judgment of the district court.

HENDRY, C.J., and GERRARD, J., join in this dissent.