Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

- 682 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

Salem Grain Company, Inc., appellant, v.
Consolidated Grain and Barge Co.
et al., appellees.

___ N.W.2d ___

Filed September 8, 2017.    No. S-16-995.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's
   grant of a motion to dismiss on the pleadings is reviewed de novo,
   accepting the allegations in the complaint as true and drawing all rea-
   sonable inferences in favor of the nonmoving party.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a ques-
   tion of law, for which an appellate court has an obligation to reach
   an independent conclusion irrespective of the decision made by the
   court below.
3. **Federal Acts: Vendor and Vendee.** Under the doctrine established by
   *Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed.
   2d 464 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct.
   1585, 14 L. Ed. 2d 626 (1965), federal antitrust laws do not regulate the
   conduct of private individuals in seeking anticompetitive action from
   the government.
4. **Constitutional Law: Federal Acts.** The doctrine established by *Eastern
   R. Conf. v. Noerr Motors*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464
   (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585,
   14 L. Ed. 2d 626 (1965), is based on both the First Amendment's peti-
   tion clause and the statutory interpretation of federal antitrust laws.
5. **Vendor and Vendee.** The application of the doctrine established by
   *Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127, 81 S. Ct. 523, 5 L.
   Ed. 2d 464 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85
   S. Ct. 1585, 14 L. Ed. 2d 626 (1965), to claims under antitrust laws is
   ultimately based on the fact that antitrust laws, tailored as they are for
   the business world, are not at all appropriate for application in the politi-
   cal arena.
6. **Vendor and Vendee: Conspiracy.** There is no "conspiracy" exception
   to the doctrine established by *Eastern R. Conf. v. Noerr Motors*, 365

- 683 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), when applied to claims under antitrust laws.

7. **Constitutional Law: Vendor and Vendee: Conspiracy.** The line to determine when the conspiracy exception applies is based not on whether a claim is antitrust in nature, but on which theory the application of the doctrine established by *Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), is predicated on, either the First Amendment or the antitrust laws.

8. **Consumer Protection.** Neb. Rev. Stat. § 59-1602 (Reissue 2010) mirrors the language of 15 U.S.C. § 45(a)(1) (2012).

9. \_\_\_\_. Neb. Rev. Stat. § 59-1603 (Reissue 2010) is construed in accordance with 15 U.S.C. § 1 (2012).

10. **Consumer Protection: Intent.** The Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 to 59-1622 (Reissue 2010 & Cum. Supp. 2012), was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies.

11. **Consumer Protection.** The Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 to 59-1622 (Reissue 2010 & Cum. Supp. 2012), is tailored for the business world, not for the political arena.

12. **Pleadings.** The doctrine established by *Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965), is an affirmative defense.

13. **Rules of the Supreme Court: Pleadings.** An affirmative defense may be asserted in a motion filed pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) when the defense appears on the face of the complaint.

14. **Appeal and Error.** In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed.

15. **Rules of the Supreme Court: Pleadings: Notice.** The Nebraska Rules of Pleading in Civil Actions, like the federal rules, have a liberal pleading requirement for both causes of action and affirmative defenses, but the touchstone is whether fair notice was provided.

16. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

17. **Conspiracy: Words and Phrases.** A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means.

18. **Actions: Aiding and Abetting.** A claim of aiding and abetting is that in addition to persons who actually participate in concerted wrongful

- 684 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

action, persons who aid, abet, or procure the commission thereof, are subject to a civil action therefor.

19. **Actions: Conspiracy: Aiding and Abetting: Liability.** Claims of civil conspiracy and aiding and abetting are essentially methods for imposing joint and several liability on all actors who committed a tortious act or any wrongful acts in furtherance thereof.

20. **Aiding and Abetting: Torts.** A claim of aiding and abetting requires the presence of an underlying tort.

21. **Conspiracy: Torts.** A "conspiracy" is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. Without such underlying tort, there can be no claim for relief for a conspiracy to commit the tort.

22. **Conspiracy: Aiding and Abetting.** A statutory violation alone is insufficient to sustain a claim of civil conspiracy or aiding and abetting.

Appeal from the District Court for Richardson County: DANIEL E. BRYAN, JR., Judge. Affirmed.

David A. Domina and Christian T. Williams, of Domina Law Group, P.C., L.L.O., for appellant.

Terry C. Dougherty, Audrey R. Svane, and Kari A.F. Scheer, of Woods & Aitken, L.L.P., for appellee Consolidated Grain and Barge Co.

Robert S. Keith and Alexis M. Wright, of Engles, Ketcham, Olson & Keith, P.C., for appellees Gary Jorn, Kevin Malone, and Beth Sickel.

Bonnie M. Boryca and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellees Becky Cromer, Ray Joy, Bart Keller, and Charles Radatz.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

FUNKE, J.

## I. NATURE OF CASE

Salem Grain Company, Inc. (Salem), appeals an order from the district court for Richardson County dismissing its

- 685 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

complaint with prejudice for failure to state a claim upon which relief could be granted. The court found that all appellees were entitled to immunity from Salem's claims under Nebraska's Consumer Protection Act[1] (NCPA) and the *Noerr-Pennington* doctrine[2] and that Salem's claims of conspiracy and aiding and abetting required an underlying tort to be actionable. Accordingly, the court ruled that any amendments to the pleading would be futile. We affirm.

## II. FACTS

Salem operates commercial grain warehouses and elevators and owns trading businesses throughout southeast Nebraska, including a location in Richardson County, Nebraska. Consolidated Grain and Barge Co. (CGB) also operates commercial grain warehouses. In 2012, CGB expressed an interest in expanding its operations to the Falls City, Nebraska, area, and it now owns and operates a commercial grain warehouse in Richardson County, which is in competition with Salem's Richardson County warehouse.

At the time of the alleged actions, the other appellees were involved with various organizations in Falls City: Becky Cromer was the executive director of the Falls City Economic Development and Growth Enterprise (EDGE), a private organization; Gary Jorn, Ray Joy, and Bart Keller were members of EDGE; Kevin Malone was a member of EDGE, the Falls City Community Redevelopment Authority (CRA), the Citizen Advisory Review Committee (CARB), and the Falls City Planning and Zoning Board; Charles Radatz was a member of EDGE and the CRA; and Beth Sickel was a member of

---

[1] Neb. Rev. Stat. §§ 59-1601 to 59-1622 (Reissue 2010 & Cum. Supp. 2012).

[2] See *Eastern R. Conf. v. Noerr Motors*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961), and *Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965).

- 686 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

EDGE, the CRA, and the CARB. Each of these appellees were sued in their individual capacities.

The remaining defendants, "John Doe I-IV and Jane Doe I-IV," were members of EDGE, the CRA, or the CARB that may have participated in the alleged wrongful acts against Salem.

Salem filed a complaint alleging that each of the individual appellees engaged in a pattern of behavior—through a series of contracts, combinations, and conspiracies—with the intent to deprive it of information, an opportunity to be heard, and due process of law, which caused Salem financial damages. More specifically, it alleged that its damages were a result of the unfair increased competition that CGB brought to the region through the special privileges it received from Falls City and that the individual appellees aided and abetted in concealing from Salem and the community those benefits.

Salem asserts that the individual appellees' pattern of behavior included preventing legal notice of the following actions from being provided to Salem: the annexation of land into Falls City; the rezoning of said land for commercial use; the declaration of said land as blighted, which made it eligible for tax increment financing; the approval of tax increment financing and the issuance of at least one bond to assist CGB; and the procurement of state and federal grants to assist CGB. In doing so, Salem contended that the appellees violated Nebraska's Open Meetings Act[3] (NOMA) and the NCPA.

As a result of CGB's entry into the market at the end of 2012, Salem alleged an annual loss net profit of 10 to 20 cents per bushel for 2 million bushels per year of grain that it would have or did handle in 2013 through 2015. During that same period, Salem alleged an annual minimum loss of $150,000 in storage revenue.

---

[3] Neb. Rev. Stat. §§ 84-1407 to 84-1414 (Reissue 2008 & Supp. 2011).

- 687 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

CGB; Cromer, Joy, Keller, and Radatz; and Jorn, Malone, and Sickel separately moved to dismiss Salem's complaint, arguing that it had failed to state a claim upon which relief could be granted, under Neb. Ct. R. Pldg. § 6-1112(b)(6). CGB, Jorn, Malone, and Sickel also asserted that the appellees were entitled to immunity under the *Noerr-Pennington* doctrine.

The court ruled that Salem could not state any claim against the appellees pursuant to the NCPA, because the appellees were entitled to immunity, under the *Noerr-Pennington* doctrine, and rejected Salem's claim that an exception to the doctrine applied, because the appellees acted unlawfully by violating the NOMA. The court also ruled that the conspiracy and aiding and abetting claims required an underlying tort to be viable. Therefore, the court dismissed the complaint with prejudice, essentially finding any amendment would be futile. Salem appealed.

## III. ASSIGNMENTS OF ERROR

Salem assigns, restated and reordered, that the court erred (1) in finding the appellees immune from suit, under the *Noerr-Pennington* doctrine or otherwise; (2) in finding that conspiracy and aiding and abetting claims are not independent claims upon which relief can be granted but, instead, require the allegation of an independent tort; (3) by sustaining appellees' § 6-1112(b)(6) motions to dismiss; (4) by denying leave to amend; and (5) by not sustaining Salem's jury demand.

## IV. STANDARD OF REVIEW

[1] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[4]

---

[4] *Zapata v. McHugh*, 296 Neb. 216, 893 N.W.2d 720 (2017).

- 688 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[5]

## V. ANALYSIS

Salem argues, summarized, that it and other grain warehouses in and around southeast Nebraska were injured by CGB's entry into the market in Richardson County, because CGB received special economic privileges. It claims that the special privileges provided to CGB were the result of the appellees' conspiracy to prevent the public, and Salem specifically, from having knowledge of the economic development activities that the city council of Falls City was providing. It further claims that the appellees participated in violations of the NOMA in order to obtain those special privileges.

As a result, it asserts that the conspiracy to provide CGB an unfair advantage in the marketplace by violating the NOMA was a violation of the NCPA under §§ 59-1602 and 59-1603, which damaged Salem and created a cause of action under § 59-1609. Further, it contends that the appellees' conspiracy to engage in wrongful conduct—by violating the NOMA, violating the NCPA, and withholding information—is sufficient to sustain claims of conspiracy and aiding and abetting. CGB argues that Salem's single factual allegation—that it expressed an interest in opening a grain warehouse in the Falls City area—cannot support any claims against it. Further, the appellees contend that, acting in their individual capacities, their actions were nothing more than petitioning the government to offer CGB incentives to open a location in Falls City to advance economic development in the community.

---

[5] *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

- 689 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

1. Appellees Are Entitled to Immunity
From Salem's NCPA Claims Under
*Noerr-Pennington* Doctrine

(a) Parties' Contentions

Salem argues that the *Noerr-Pennington* doctrine is a narrow defense that applies only to antitrust claims and not to its claims under the NCPA. It argues that §§ 59-1602 and 59-1603 of the NCPA were modeled after the Federal Trade Commission Act[6] (FTCA), not the Sherman Act[7]; that the FTCA focuses on consumer rather than market protection; and that the FTCA is, therefore, broader than merely antitrust claims.

Further, it contends that if we do find that the *Noerr-Pennington* doctrine applies to its claims, we should adopt a "conspiracy" exception to the doctrine in which politicians or political entities are involved as conspirators with private actors. While the U.S. Supreme Court has specifically rejected such an exception to the *Noerr-Pennington* doctrine, Salem contends that the Supreme Court limited its holding to the Sherman Act. Accordingly, assuming that the doctrine applies outside the context of antitrust claims, Salem contends that the doctrine remains subject to the "conspiracy" exception for unlawful conduct in petitioning the government.

Appellees argue that the *Noerr-Pennington* doctrine entitles them to immunity from Salem's claims under two theories. First, to the extent that the *Noerr-Pennington* doctrine is limited to the Sherman Act, and extended to the FTCA, private citizens petitioning their government for favorable business conditions are entitled to immunity, because federal antitrust laws were tailored to regulate business, not political arenas. Further, they assert that the NCPA is statutorily required to be construed in accordance with similar federal antitrust laws. Second, the First Amendment right to petition

---

[6] See 15 U.S.C. §§ 41 to 58 (2012).

[7] See 15 U.S.C. §§ 1 to 7 (2012).

- 690 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

the government, which the *Noerr-Pennington* doctrine is also based on, is not limited to the antitrust context.

Appellees also contend that there are no applicable exceptions to the *Noerr-Pennington* doctrine regarding Salem's claims. First, Jorn, Malone, and Sickel contend that the U.S. Supreme Court has rejected any "conspiracy" exception to antitrust claims. Second, all appellees argue that the "sham" exception does not apply.

Alternatively, some of the appellees argue that they are entitled to immunity under Nebraska's Political Subdivisions Tort Claims Act and the *Parker* doctrine.[8]

### (b) Principles of *Noerr-Pennington* Doctrine

We recently considered the *Noerr-Pennington* doctrine in *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*.[9] In that case, we determined that the plaintiff was not entitled to immunity from the defendant's counterclaims, regarding damages from the plaintiff's tortious interference claims and antitrust activities, because the *Noerr-Pennington* doctrine is an affirmative defense that the plaintiff had waived by failing to timely assert it. Our decision in *ACI Worldwide Corp.* required this court to examine the development of the *Noerr-Pennington* doctrine in its application to private individual's interactions with the judicial branch only.

However, the *Noerr-Pennington* doctrine's application to judicial proceedings came significantly later than its creation in the context of petitioning the legislative and executive branches.[10] Accordingly, we briefly examine the principles

---

[8] See *Parker v. Brown*, 317 U.S. 341, 63 S. Ct. 307, 87 L. Ed. 2d 315 (1943).

[9] *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

[10] See *California Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972).

- 691 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

relevant to the *Noerr-Pennington* doctrine's application to private citizens' actions of petitioning the government.

As we recognized in *ACI Worldwide Corp.*, the *Noerr-Pennington* doctrine developed as a result of two decisions by the U.S. Supreme Court: *Eastern R. Conf. v. Noerr Motors*,[11] and *Mine Workers v. Pennington*.[12] In *Noerr Motors*, a collective of truckers sued several railroad companies, alleging that the railroads had violated the Sherman Act through an advertising campaign which was designed to destroy the trucking industry by influencing legislators and governors to only enact laws harmful to the trucking industry and damage its public image. The Supreme Court held that the Sherman Act did not apply to a private citizen's conduct undertaken to influence government action, because the Sherman Act's intended purpose was to regulate business, not political activities.[13] This was true even if the conduct by which citizens attempted to influence governmental regulation was undertaken for the sole purpose of destroying competition, involved unethical business practices, or was specifically intended to hurt competitors.[14]

In *Pennington*, a coal company claimed antitrust violations against the trustees of a coal miners' union, alleging that it, along with large coal companies, had lobbied the Secretary of Labor to establish a minimum wage in a contract market that would drive small coal companies out of business. In both *Noerr Motors* and *Pennington*, the Supreme Court found the defendants immune from liability under the Sherman Act.

The Supreme Court explained in *Pennington* that "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose" and expanded

---

[11] *Noerr Motors, supra* note 2.

[12] *Pennington, supra* note 2.

[13] *Noerr Motors, supra* note 2.

[14] *Id.*

- 692 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

the application of *Noerr Motors* to lobbying efforts directed at executive agencies.[15]

Since *Noerr Motors* and *Pennington*, the Supreme Court has extended the doctrine to petitions before administrative agencies and courts.[16] Additionally, it has granted *Noerr-Pennington* immunity "to a wide range of activities in addition to traditional lobbying, including . . . sales and marketing efforts[] and court litigation."[17]

[3] In *Columbia v. Omni Outdoor Advertising, Inc.*,[18] the Supreme Court further refined *Noerr Motors* and *Pennington* to stand for the proposition that "[t]he federal antitrust laws . . . do not regulate the conduct of private individuals in seeking anticompetitive action from the government." In that case, the Supreme Court applied these principals to lobbying efforts directed at a municipal government.[19]

[4] The U.S. Supreme Court predicated its holding in *Noerr Motors* on the First Amendment's petition clause and its statutory interpretation of the Sherman Act.[20] It reasoned:

> In a representative democracy such as this, [the Legislative and Executive] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the

---

[15] *Pennington, supra* note 2, 381 U.S. at 670.

[16] See *California Transport, supra* note 10. See, also, *Davric Maine Corp. v. Rancourt*, 216 F.3d 143 (1st Cir. 2000).

[17] *Doron Precision Systems, Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 189 (S.D.N.Y. 2006). See, also, *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991).

[18] *Omni Outdoor Advertising, Inc., supra* note 17, 499 U.S. at 379-80.

[19] *Id.*

[20] See *Cardtoons v. Major League Baseball Players Ass'n*, 208 F.3d 885 (2000), citing *Noerr Motors, supra* note 2. See, also, *Omni Outdoor Advertising, Inc., supra* note 17.

power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act. [Additionally], and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.[21]

The Supreme Court later reconciled these two principles by explaining that its interpretation of the Sherman Act was "in the light of the First Amendment's Petition Clause."[22]

While the U.S. Supreme Court has only explicitly applied immunity under the *Noerr-Pennington* doctrine in the antitrust context, many states have adopted and applied the *Noerr-Pennington* doctrine to state antitrust claims,[23] as well as other

---

[21] *Noerr Motors, supra* note 2, 365 U.S. at 137-38.

[22] *FTC v. Superior Court Trial Lawyers Assn.*, 493 U.S. 411, 424, 110 S. Ct. 768, 107 L. Ed. 2d 851 (1990).

[23] See, *Blank v. Kirwan*, 39 Cal. 3d 311, 703 P.2d 58, 216 Cal. Rptr. 718 (1985); *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163 (Miss. 2001) (state antitrust and tort claims alleging restraint of trade, civil conspiracy, and tortious interference); *Defino v. Civic Center Corp.*, 780 S.W.2d 665 (Mo. App. 1989) (state antitrust and tort claims); *Green Mountain Realty v. Fifth Estate Tower*, 161 N.H. 78, 13 A.3d 123 (2010) (claim asserted under New Hampshire's Consumer Protection Act); *Good Hope Hosp. v. Dept. of Health*, 174 N.C. App. 266, 620 S.E.2d 873 (2005) (state antitrust and tort claims); *Black Hills Jewelry Mfg. Co. v. Felco Jewel Ind.*, 336 N.W.2d 153 (S.D. 1983); *Anderson Development Co. v. Tobias*, 116 P.3d 323 (Utah 2005) (state antitrust and tort claims). See, also, *Astoria Entertainment, Inc. v. DeBartolo*, 12 So. 3d 956 (La. 2009) (generally applicable to state claims); *Kellar v. VonHoltum*, 568 N.W.2d 186 (Minn. App. 1997) (suggesting *Noerr-Pennington* might apply, under Minnesota law, beyond antitrust context); *Amer. Med. Transp. v. Curtis-Universal*, 154 Wis. 2d 135, 452 N.W.2d 575 (1990).

- 694 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

claims.[24] Many courts have reasoned that the *Noerr-Pennington* doctrine's reliance on the First Amendment's petition clause provides justification to extend such immunity to other claims, because "there is no reason that the constitutional protection of the right to petition should be less compelling in the context of claims that arise outside of the scope of antitrust laws."[25] In fact, in *ACI Worldwide Corp.*, we recognized the extension of the *Noerr-Pennington* doctrine to nonantitrust claims.[26]

Further, the *Noerr-Pennington* doctrine applies in state court and to state-law claims because it is grounded on First Amendment rights to petition the government.[27] The First Amendment to the U.S. Constitution guarantees "the right

---

[24] See, *Ex Parte Simpson*, 36 So. 3d 15 (Ala. 2009) (state tort causes of action); *Gunderson v. University of Alaska, Fairbanks*, 902 P.2d 323 (Alaska 1995) (state contract claim); *Zeller v. Consolini,* 59 Conn. App. 545, 758 A.2d 376 (2000) (state tort claim for tortious interference with business relationship); *Sandholm v. Kuecker*, 405 Ill. App. 3d 835, 942 N.E.2d 544, 347 Ill. Dec. 341 (2010) (state claims), *reversed on other grounds* 2012 IL 111443, 962 N.E.2d 418, 356 Ill. Dec. 733 (2012); *Bond v. Cedar Rapids Television Co.*, 518 N.W.2d 352 (Iowa 1994) (state tort claim); *Grand Communities, Ltd. v. Stepner*, 170 S.W.3d 411 (Ky. App. 2004) (state tort claims stemming from zoning decisions); *Arim v. General Motors Corp.*, 206 Mich. App. 178, 520 N.W.2d 695 (1994) (state tort claims); *Structure Bldg. Corp. v. Abella*, 377 N.J. Super. 467, 873 A.2d 601 (2005) (state tort claims); *Arts4All Ltd. v. Hancock*, 25 A.D.3d 453, 810 N.Y.S.2d 15 (2006) (state tort claim); *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743 (R.I. 2004) (common-law tort claims); *RRR Farms, Ltd. v. American Horse Protection*, 957 S.W.2d 121 (Tex. App. 1997) (state tort claims); *Titan America, LLC v. Riverton Inv. Corp.*, 264 Va. 292, 569 S.E.2d 57 (2002) (state claims for conspiracy and business torts); *Perrine v. E.I. du Pont de Nemours and Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010) (noting *Noerr-Pennington* generally applied to state claims, but holding that doctrine did not apply in particular circumstances of this case).

[25] *Astoria Entertainment, Inc., supra* note 23, 12 So. 3d at 964. See, e.g., *Hufsmith v. Weaver*, 817 F.2d 455 (8th Cir. 1987); *We, Inc. v. City of Philadelphia*, 174 F.3d 322 (3d Cir. 1999); *Kellar, supra* note 23.

[26] *ACI Worldwide Corp., supra* note 9.

[27] *Harrah's Vicksburg Corp., supra* note 23.

- 695 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

of the people . . . to petition the Government for a redress of grievances."

[5] Nevertheless, in the context of antitrust laws, *Omni Outdoor Advertising, Inc.* reiterated that the U.S. Supreme Court's ultimate conclusion in *Noerr Motors* was based on the fact that "antitrust laws, 'tailored as they are for the business world, are not at all appropriate for application in the political arena.'"[28] Under this reasoning, federal and state courts have applied the *Noerr-Pennington* doctrine to FTCA cases,[29] state unfair trade practices acts,[30] and a state consumer protection act.[31] The extension of the doctrine to state laws in this context is based on state statutory requirements to construe state antitrust laws in accordance with their federal counterparts.[32]

In *Rodgers v. F.T.C.*,[33] the petitioner contended that opponents of an "initiative measure had combined 'in both vertical and horizontal agreements, to make price representations to the public that constituted unfair and deceptive trade practices'" under § 5 of the FTCA, codified at 15 U.S.C. § 45, as well as the Sherman Act. The Federal Trade Commission applied the *Noerr-Pennington* doctrine to the claims with the similar reasoning that "'[t]he proscriptions of Section 5 of the FTC[A], as we view them, like the proscriptions of the Sherman Act, are tailored for the business world, not for

---

[28] *Omni Outdoor Advertising, Inc., supra* note 17, 499 U.S. at 380, citing *Noerr Motors, supra* note 2.

[29] See, *Rodgers v. F.T.C.*, 492 F.2d 228 (9th Cir. 1974); *Union Oil Company of California*, 138 F.T.C. 1 (2004).

[30] See, e.g., *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852 (5th Cir. 2000); *People ex rel. Gallegos v. Pacific Lumber*, 158 Cal. App. 4th 950, 70 Cal. Rptr. 3d 501 (2008). See, also, *Green Mountain Realty, supra* note 23.

[31] See, *Suburban Restoration Co., Inc. v. ACMAT Corp.*, 700 F.2d 98 (2d Cir. 1983); *Green Mountain Realty, supra* note 23.

[32] See *Green Mountain Realty, supra* note 23.

[33] *Rodgers, supra* note 29, 492 F.2d at 229.

- 696 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

the political arena.'"[34] The Ninth Circuit Court of Appeals affirmed the Federal Trade Commission's decision, because all parties interested in the outcome of an initiative measure had an "equal right to submit their arguments to the electorate at large."[35]

In *Green Mountain Realty v. Fifth Estate*,[36] the New Hampshire Supreme Court considered whether the *Noerr-Pennington* doctrine applied to claims brought under its consumer protection act. The court noted that New Hampshire's Consumer Protection Act was analogous to and statutorily required to be construed consistently with § 5(a)(1) of the FTCA, as amended, which states, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."[37]

Just as the *Rodgers* court and the Federal Trade Commission held that the *Noerr-Pennington* doctrine applied to claims brought under the FTCA, the court in *Green Mountain Realty* held that the *Noerr-Pennington* doctrine applied to claims brought under New Hampshire's Consumer Protection Act. The court ruled that even conduct which is deemed to be an unfair or deceptive practice within the act would be immune if it occurred in a political setting. "'Fraudulent or deceptive conduct can be actionable under the [Consumer Protection Act] only if it occurs in a business setting involving the advertising or sale of a commodity or service as part of the day-to-day business of the defendant.'"[38] The court too recognized that "the proscriptions of the [FTCA], 'like the proscriptions

[34] *Id.* at 230.

[35] *Id.* at 231.

[36] *Green Mountain Realty, supra* note 23.

[37] See *id*. See, also, 15 U.S.C. § 45.

[38] *Green Mountain Realty, supra* note 23, 161 N.H. at 87, 13 A.3d at 131, quoting *Brzica v. Trustees of Dartmouth College*, 147 N.H. 443, 791 A.2d 990 (2002).

- 697 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

of the Sherman Act, are tailored for the business world, not for the political arena.'"[39]

[6] However, the *Noerr-Pennington* doctrine is not without its limitations. In *Omni Outdoor Advertising, Inc.*, the U.S. Supreme Court held that there was a "'sham' exception" to private individuals' petitioning for anticompetitive action from their government.[40] The "sham" exception involves attempts to influence public officials for the sole purpose of expense or delay.[41] Conversely, the Court has rejected any application of a "'conspiracy' exception" to the *Noerr-Pennington* doctrine specifically in the context of antitrust laws.[42]

In *Omni Outdoor Advertising, Inc.*, the defendant had argued for both a broad construction of the conspiracy exception, which applies whenever a public official and private citizen conspired to restrain trade, and a narrow construction, which applies only when the conspiracy is to accomplish action not in the public interest or by corrupt means.[43] The Court rejected both constructions of the exception to the *Noerr-Pennington* doctrine:

"It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became . . . 'co-conspirators'" in *some* sense with the private party urging such action. . . . And if the invalidating "conspiracy" is limited to one that involves some element of unlawfulness (beyond mere anticompetitive motivation), the invalidation would have nothing to do with the policies of the antitrust laws.[44]

---

[39] *Id.* at 86-87, 13 A.3d at 129, quoting *Rodgers, supra* note 29.

[40] *Omni Outdoor Advertising, Inc., supra* note 17, 499 U.S. at 380. Accord *ACI Worldwide Corp., supra* note 9.

[41] *Id.*

[42] *Id.*, 499 U.S. at 382.

[43] *Omni Outdoor Advertising, Inc., supra* note 17.

[44] *Id.*, 499 U.S. at 383 (emphasis in original) (citation omitted).

- 698 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

[7] Since *Omni Outdoor Advertising, Inc.*, courts have continued to reject a conspiracy exception to the *Noerr-Pennington* doctrine in the context of antitrust claims.[45] However, courts have applied the conspiracy exception to the doctrine when claims are based solely on the First Amendment's petition clause, not antitrust laws, because the First Amendment does not entitle individuals to absolute immunity for their speech.[46] As such, the line to determine when the conspiracy exception applies is based not on whether the claim is antitrust in nature, but on which theory the application of the *Noerr-Pennington* doctrine is predicated on, either the First Amendment or the antitrust laws.

### (c) Salem's Claims Under NCPA

Salem alleges violations of §§ 59-1602 and 59-1603. Before examining these statutes, however, we note Neb. Rev. Stat. § 59-829 (Reissue 2010) provides that when "any provision of Chapter 59 is the same as or similar to the language of a federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts."

[8] Section 59-1602 states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." We have stated that § 59-1602 mirrors the language of 15 U.S.C. § 45(a)(1).[47]

[9] Section 59-1603 provides that "[a]ny contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful." In *State ex rel.*

---

[45] See, e.g., *Coll v. First American Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011).

[46] See, e.g., *Cardtoons, supra* note 20; *Astoria Entertainment, Inc., supra* note 23; *Westborough Mall v. City of Cape Girardeau, MO.*, 693 F.2d 733 (8th Cir. 1982).

[47] *Moats v. Republican Party of Neb.*, 281 Neb. 411, 796 N.W.2d 584 (2011). See 15 U.S.C. § 45(a)(1).

- 699 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

*Douglas v. Associated Grocers*,[48] we construed § 59-1603 in accordance with the U.S. Supreme Court's interpretation of 15 U.S.C. § 1, and we stated that the NCPA is "the state version of the Sherman Antitrust Act."

[10,11] The NCPA is Nebraska's version of the Sherman Act, but it also encompasses portions of other federal antitrust laws, including the FTCA from which § 59-1602 is modeled. Further, the act was intended to be an antitrust measure to protect Nebraska consumers from monopolies and price-fixing conspiracies.[49] Accordingly, just as previous courts have asserted that the proscriptions of the FTCA and the Sherman Act are tailored for the business world, not for the political arena, we find that proscriptions of the NCPA are tailored for the business world, not for the political arena. As a result, we hold that Salem's claim that appellees violated the NCPA is barred under the immunities extended by the *Noerr-Pennington* doctrine.

While Salem's allegations are of unlawful conduct in the political arena, its claimed harm is antitrust in nature under the NCPA. Accordingly, its theory of recovery is predicated not on the First Amendment but on the interpretation of antitrust laws. Therefore, based on *Omni Outdoor Advertising, Inc.*, there is not a viable exception for a conspiracy between the appellees and public officials, irrespective of any alleged corrupt or unlawful means which may have resulted in harm to Salem. As a result, the conspiracy exception to the *Noerr-Pennington* doctrine is not applicable to the appellees.

### (d) Appellees Sufficiently Raised
### *Noerr-Pennington* Doctrine

[12-14] As we stated above, we recently recognized that "the *Noerr-Pennington* defense is an affirmative

---

[48] *State ex rel. Douglas v. Associated Grocers*, 214 Neb. 79, 83, 332 N.W.2d 690, 693 (1983).

[49] *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004).

- 700 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

defense."[50] An affirmative defense may be asserted in a motion filed pursuant to § 6-1112(b)(6) when the defense appears on the face of the complaint.[51] CGB, Jorn, Malone, and Sickel explicitly raised the doctrine in their motion to dismiss. Cromer, Joy, Keller, and Radatz, however, did not raise the defense. Nevertheless, the court applied immunity under the doctrine to all appellees. Salem did not assign error to the court's application of the *Noerr-Pennington* doctrine to Cromer, Joy, Keller, and Radatz. In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed.[52] We find no plain error here.

[15] The Nebraska Rules of Pleading in Civil Actions, like the federal rules, have a liberal pleading requirement for both causes of action and affirmative defenses, but the touchstone is whether fair notice was provided.[53] Because Salem received fair notice that the *Noerr-Pennington* defense was being raised by CGB, Jorn, Malone, and Sickel, which were similarly situated to Cromer, Joy, Keller, and Radatz, Salem was not prejudiced by the latter's failure to assert the defense. Accordingly, the *Noerr-Pennington* doctrine was sufficiently raised regarding all appellees.

[16] Because we find that the appellees are immune from Salem's NCPA claims under the *Noerr-Pennington* doctrine, we need not address their remaining assertions of immunity from the NCPA claims. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[54]

---

[50] *ACI Worldwide Corp., supra* note 9, 296 Neb. at 863, 896 N.W.2d at 188.

[51] *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017).

[52] *In re Trust of Rosenberg*, 273 Neb. 59, 727 N.W.2d 430 (2007).

[53] *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*, 294 Neb. 715, 885 N.W.2d 1 (2016).

[54] *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017).

- 701 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

## 2. Claims of Aiding and Abetting and Civil Conspiracy Require Underlying Tort to Be Actionable

Salem argues that the court erred in ruling that its claims of civil conspiracy and aiding and abetting required an underlying tort to be actionable. It argues that under our prior case law, only an underlying wrongful conduct was required, and that that statement of the law was inadvertently changed. Accordingly, Salem asserts that a party is liable for the damages resulting from any wrongful or tortious act that they encourage or assist in the performance of, even if that party itself did not commit any underlying wrongful acts. Essentially, it contends that the appellees are each liable for the city council's and their own alleged violations of the NCPA and the NOMA, and for otherwise withholding information from the public.

[17] A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means.[55] A claim of civil conspiracy requires the plaintiff to establish that the defendants had an expressed or implied agreement to commit an unlawful or oppressive act that constitutes a tort against the plaintiff.[56]

[18,19] Similarly, a claim of aiding and abetting is that "'in addition to persons who actually participate in [concerted wrongful action], persons who aid, abet, or procure the commission thereof, are subject to a civil action therefor.'"[57] Both of these claims are essentially methods for imposing joint and several liability on all actors who committed a tortious act or any wrongful acts in furtherance thereof.[58]

---

[55] *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015).

[56] *deNourie & Yost Homes, supra* note 51.

[57] *Bergman v. Anderson*, 226 Neb. 333, 338, 411 N.W.2d 336, 340 (1987).

[58] See, *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274 (1995); *Bergman, supra* note 57. See, also, *Malone, supra* note 55.

- 702 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

[20] Salem argues that our decision in *Bergman v. Anderson*,[59] establishes that there does not need to be an underlying actionable tort, or even wrong, to sustain an aiding and abetting claim. Instead, it contends our holding in *Bergman* was that acts of aiding, abetting, and procuring the commission of wrongful conduct that causes damages are themselves the actionable wrongful conduct, and, therefore, aiding and abetting is an independent tort. We cannot agree with this interpretation. Instead, we held in *Bergman* that the plaintiff had "stated sufficient facts to support a theory that [the defendant] acted in concert with others and aided and abetted in the commission of an assault or battery [by] alleg[ing] that those attacking [the plaintiff] were under [the defendant's] 'direction.'"[60] Accordingly, the underlying conduct was the actionable tort of assault and battery.

[21,22] Further, our precedent is clear regarding claims of civil conspiracy: a "conspiracy" is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort.[61] Without such underlying tort, there can be no claim for relief for a conspiracy to commit the tort.[62] We reject Salem's assertion that a statutory violation alone is sufficient to sustain a claim of civil conspiracy or aiding and abetting.

Salem cites *Eicher v. Mid America Fin. Invest. Corp.*,[63] to argue that unlawful conduct under the NCPA, and by inference the NOMA, could support its claims. In *Eicher*, we concluded that the appellants were guilty of civil conspiracy because they had committed fraudulent misrepresentation

---

[59] *Bergman, supra* note 57.

[60] *Id*. at 339, 411 N.W.2d at 341.

[61] *Malone, supra* note 55.

[62] *Id.*

[63] *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008).

- 703 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
SALEM GRAIN CO. v. CONSOLIDATED GRAIN & BARGE CO.
Cite as 297 Neb. 682

*and* violated the NCPA.[64] Accordingly, the conspiracy to commit the underlying tort, fraudulent misrepresentation, made each defendant in that case jointly and severally liable for all wrongful conduct committed in furtherance thereof, including violations of the NCPA.[65] Therefore, Salem's reliance upon *Eicher* is misplaced.

The only underlying conduct Salem asserts are violations of the NCPA and the NOMA. As stated above, such statutory violations alone are not sufficient to support claims of civil conspiracy or aiding and abetting. Therefore, we find that Salem failed to properly plead its claims of civil conspiracy or aiding and abetting.

### 3. SALEM FAILED TO STATE CLAIM UPON WHICH RELIEF COULD BE GRANTED

Salem's complaint alleges claims under the NCPA, aiding and abetting and civil conspiracy. As we have found, the appellees are entitled to immunity from Salem's NCPA claims. Further, Salem's claims of aiding and abetting and civil conspiracy require an underlying tort to be actionable and no such tort has been pled. Therefore, Salem has not stated claims upon which relief can be granted as a matter of law.

### 4. SALEM'S REMAINING ASSIGNMENTS OF ERROR ARE WITHOUT MERIT

In its reply brief, Salem conceded that "[i]f dismissal is appropriate and Arguments 1 - 3 are not successful, there is no amending to be done in this case."[66] Accordingly, we do not address its assignment of error to the contrary.

Additionally, because we find that Salem failed to state a claim upon which relief could be granted and Salem conceded

---

[64] *Id.*

[65] *Id.*

[66] Reply brief for appellant at 17.

that leave to amend would be futile, we need not address Salem's assignment of error that the court failed to sustain its jury demand.

## VI. CONCLUSION

The *Noerr-Pennington* doctrine provides immunity to appellees for petitioning the government to take action, even if such resulting action violated the NCPA. Further, claims of civil conspiracy and aiding and abetting require an underlying tort, not merely an underlying statutory violation, to be actionable. Salem failed to state a claim upon which relief could be granted because appellees were entitled to immunity under the *Noerr-Pennington* doctrine, and it alleged only underlying statutory violations. Further, Salem conceded that any amendment to its petition would be futile. Therefore, we affirm the court's order dismissing Salem's complaint with prejudice.

AFFIRMED.